# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| R.V., AS EXECUTOR DE SON TORT OF THE ESTATE OF A.V., A MINOR, AND ON BEHALF OF THE ESTATE OF A.V. AND THE SURVIVORS OF THE ESTATE, ) ) ) ) ) ) ) ) | **Case No. 3:22-cv-864-MMH-PDB** |

                          Plaintiff, )

        vs. )

GRINDR, LLC. )

                     Defendant. )

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 2

I.    The Grindr Application ................................................................................. 2

II.   The Complaint ................................................................................................ 3

ARGUMENT ........................................................................................................... 4

I.    Section 230 Preempts All of Plaintiff's Claims ........................................... 4

       a.    The Elements of Section 230 Immunity Are Satisfied Here ......... 5

             i.    Grindr Is an Interactive Computer Service Provider .......... 5

             ii.   Plaintiff's Claims Treat Grindr as a Publisher of Information ........................................................................... 6

             iii.  The Claims Are Based on Information Provided by Third Parties ................................................................................... 8

       b.    The TVPRA Claim Does Not Fall Within Section 230's Exemptions .................................................................................. 11

             i.    The Complaint Does Not Allege a Commercial Sex Act .... 12

             ii.   The Complaint Does Not Allege Grindr Knowingly Participated in a Venture Engaged in Sex Trafficking of A.V. ................................................................................... 12

             iii.  The Complaint Does Not Allege Grindr Knowingly Benefited from the Alleged Sex Trafficking of A.V. ........... 14

II.   Plaintiff's Claims also Fail for Reasons Independent of Section 230 ... 16

       a.    The Complaint Fails to Allege Causation (Counts II-VIII) ......... 16

       b.    Plaintiff's Product Liability Claims (Counts II and III) Fail Because Grindr Is Not a Product and Is Not Unreasonably Dangerous ................................................................................. 18

c.    Plaintiff's Claims Sounding in Negligence (Counts III, IV and V) Fail Because the Complaint Fails to Allege Grindr Owed A.V. a Duty ................................................................................. 21

d.    Plaintiff's IIED Claim Fails Because Grindr's Behavior was Not Outrageous (Count VI) ................................................................. 22

e.    Plaintiff's NIED Claim Fails Because the Complaint Does not Allege that A.V. Suffered a Physical Impact (Count VII)............ 23

f.    The Complaint Fails to State a Claim for Negligent Misrepresentation (Count VIII) ................................................... 24

CONCLUSION ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................. 4, 12

*Bailey v. Janssen Pharmaceutica, Inc.,*
    2006 WL 3665417 (S.D. Fla. Nov. 14, 2006) ................................ 17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................4

*Bryant v. Avado Brands, Inc.,*
    187 F.3d 1271 (11th Cir. 1999) ....................................................2

*Collins v. Countrywide Home Loans, Inc.,*
    680 F. Supp. 2d 1287 (M.D. Fla. 2010) ...................................... 24

*Colon v. Twitter,*
    2020 WL 11226013 (M.D. Fla. Mar. 24, 2020) .......................... 16

*Cook v. MillerCoors, LLC,*
    829 F. Supp. 2d 1208 (M.D. Fla. 2011) ................................. 20, 21

*David v. Weinstein Co. LLC,*
    431 F. Supp. 3d 290 (S.D.N.Y. 2019) .......................................... 12

*Dimieri v. Medicis Pharms. Corp.,*
    2014 WL 3417364 (M.D. Fla. July 14, 2014) .............................. 17

*Doe #1 v. Red Roof Inns, Inc.,*
    21 F.4th 714 (11th Cir. 2021) .................................................... 13

*Doe v. Kik Interactive, Inc.,*
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................*passim*

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008)..........................................................7

*Does 1-6 v. Reddit, Inc.,*
    51 F. 4th 1137 (9th Cir. 2022) ................................. 11, 13, 14, 15

iv

*Dowbenko v. Google Inc.*,
582 F. App'x 801 (11th Cir. 2014) ................................................................5

*Drilling Consultants, inc. v. First Montauk Sec. Corp.*,
806 F. Supp. 2d 1228 (M.D. Fla. 2011) .................................................*passim*

*Dunkel v. Hamilton*,
2016 WL 4844662 (M.D. Fla. Aug. 8, 2016) ............................................. 23

*Dyroff v. Ultimate Software Group, Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017)............................................. 22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008)...................................................................... 10

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) .............................................................................6

*Garcia v. Carnival Corp.*,
838 F. Supp. 2d 1334 (S.D. Fla. 2012) .................................................. 22, 23

*Garrett-Alfred v. Facebook, Inc.*,
540 F. Supp. 3d 1129 (M.D. Fla. 2021) ...................................................... 23

*Geiss v. Weinstein Co. Holdings, LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................... 15, 16

*Gibbs v. Republic Tobacco, L.P.*,
119 F. Supp. 2d 1288 (M.D. Fla. 2000) ...................................................... 20

*Gibson v. NCL (Bahamas) Ltd.*,
2012 WL 1952667 (S.D. Fla. May 30, 2012) .............................................. 24

*Green v. America Online (AOL)*,
318 F.3d 465 (3d Cir. 2003) ...........................................................................7

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586
(2d Cir. 2019) .......................................................................................*passim*

*Jackson v. Airbnb, Inc.*,
2022 WL 16752071 (C.D. Cal. Nov. 4, 2022) ........................................ 19, 20

*Jane Doe 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ........................................................................ 6, 7

*Kaufman v. Pfizer Pharms., Inc.*,
    2010 WL 9438673 (S.D. Fla. Nov. 23, 2010).......................................*passim*

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014).................................................................. 8, 10

*L.H. v. Marriott Int'l, Inc.*,
    2022 WL 1619637 (S.D. Fla. May 23, 2022)........................................*passim*

*Labzda v. Purdue Pharma, L.P.*,
    292 F. Supp. 2d 1346 (S.D. Fla. 2003) .......................................................... 21

*Lalonde v. Royal Caribbean Cruises, Ltd.*,
    2019 WL 144129 (S.D. Fla. Jan. 9, 2019) ..................................................... 19

*Lee v. Clorox Int'l Co.*,
    466 F. App'x 826 (11th Cir. 2012) ................................................................ 21

*M.H. v. Omegle.com, LLC*,
    2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ..........................................*passim*

*Marzullo v. Crosman Corp.*,
    289 F. Supp. 2d 1337 (M.D. Fla. 2003) ........................................................ 18

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................... 14

*Olson v. Barrett*,
    2015 WL 1277933 (M.D. Fla. Mar. 20, 2015) .............................................. 21

*Rinker v. Carnival Corp.*,
    753 F. Supp. 2d 1237 (S.D. Fla. 2010) .................................................... 16, 17

*Roca Labs, Inc. v. Consumer Op. Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015) ...........................................................5

*Rogers v. Christie*,
    795 F. App'x 878 (3d Cir. 2020)................................................................... 19

*Rothis v. M & I Marshall & Isley Bank*,
    2010 WL 3893960 (M.D. Fla. Sept. 29, 2010).............................................. 24

*Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*,
  2019 WL 8895223 (S.D. Fla. Nov. 15, 2019).................................. 24

*Saponaro v. Grindr, LLC*,
  93 F. Supp. 3d 319 (D.N.J. 2015) ....................................... 6, 7, 8

*Sparks v. Medtronic, Inc.*,
  2021 WL 2649235 (M.D. Fla. June 28, 2021) ...................................... 16, 17

*Tambourine Comerico Int'l S.A. v. Solowsky*,
  2007 WL 689466 (S.D. Fla. Mar. 4, 2007) .................................. 24

*Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*,
  280 F.R.D. 676 (S.D. Fla. 2012).................................. 25

*U.S. v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016) ......................................... 13, 15

*U.S. v. Rivera*,
  2012 WL 6589526 (M.D. Fla. Dec. 18, 2012), *aff'd* 551 F. App'x 531
  (11th Cir. 2014) .................................. 12

*United States v. Raniere*,
  384 F. Supp. 3d 282 (E.D.N.Y. 2019) .................................. 12

*Waves of Hialeah, Inc. v. Machado*,
  300 So. 3d 739 (3d DCA 2020).................................. 22

**State Cases**

*Cardozo v. True*,
  342 So. 2d 1053 (Fla. 2d DCA 1977) ......................................... 19

*Clemente v. Horne*,
  707 So. 2d 865 (Fla. 3d DCA 1998) ......................................... 23

*Doe v. Uber Techs., Inc.*,
  79 Cal. App. 5th 410 (Cal. Ct. App. 2022), *rev. denied* (Aug. 24, 2022) ..... 19

*Edward M. Chadbourne, Inc. v. Vaughn*,
  491 So. 2d 551 (Fla. 1986) .......................................... 18

*Garrison Retirement Home Corp. v. Hancock*,
  484 So.2d 1257 (Fla. 4th DCA 1985).......................................... 21

*Intellect Art Multimedia, Inc. v. Milewski*,
2009 WL 2915273 (N.Y. Sup. Ct. N.Y. Cty. Sept. 11, 2009) ...................... 19

*Jackson Hewitt, Inc. v. Kaman*,
100 So. 3d 19 (Fla. 2011) .............................................................. 21

*McCain v. Fla. Power Corp.*,
593 So. 2d 500 (Fla. 1992) ............................................................ 21

*Metro. Life Ins. Co. v. McCarson*,
467 So. 2d 277 (Fla. 1985) ............................................................ 22

*R.J. v. Humana of Fla., Inc.*,
652 So. 2d 360 (Fla. 1995) ....................................................... 23, 24

*Surloff v. Regions Bank*,
179 So.3d 472 (Fla. 4th DCA 2015) ................................................ 22

*West v. Caterpillar Tractor Co. Inc.*,
336 So. 2d 80 (Fla. 1976) .............................................................. 18

*Williams v. Davis*,
974 So. 2d 1052 (Fla. 2007) .......................................................... 21

*Zell v. Meek*,
665 So. 2d 1048 (Fla. 1995) .......................................................... 23

## Federal Statutes

18 U.S.C.
§ 1591 (Trafficking Victims Protection Reauthorization Act) ............*passim*
§ 1591(a)(1) ........................................................................ 11, 12
§ 1591(a)(2) .................................................................... 11, 12, 14
§ 1591(e)(3) ............................................................................ 12
§ 1595 .................................................................................. 11

47 U.S.C.
§ 230 ..............................................................................*passim*
§ 230(c)(1) .............................................................................. 4
§ 230(e)(3) .............................................................................. 4
§ 230(e)(5)(A) ......................................................................... 11
§ 230(f)(2) .............................................................................. 5

**Rules**

Fed. R. Civ. P.
    9(b) ..................................................................................................... 25
    12(b)(6) ............................................................................................. 1, 4

MD Local Rule 3.01(g) ....................................................................... 25

**Other Authorities**

Restatement (Second) of Torts § 402A (1965) ........................................ 18, 20

Restatement (Third) of Torts § 19 (1988) ............................................... 19

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Grindr LLC moves to dismiss the Amended Complaint, (ECF 9), and provides the following Memorandum.

## PRELIMINARY STATEMENT

Plaintiff R.V. claims Defendant Grindr LLC is responsible for the death of his son, A.V., who died by suicide in 2020. R.V. claims A.V. used Grindr's social networking application to meet adults with whom A.V. engaged in sexual activity. But R.V. does not allege Grindr knew A.V. lied about his age to access Grindr (as he had to have done), or about the alleged sexual relationships. Rather, the Complaint makes clear Grindr treated A.V. no differently than other users, providing neutral tools to connect with others. This Court should dismiss R.V.'s claims with prejudice.

*First,* Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, prohibits holding Grindr liable for content supplied by third parties – here, the messages A.V. received from adults. Although R.V. purports to challenge Grindr's own "first-party content," the crux of the Complaint is that Grindr failed to prevent A.V. from interacting with adults, a theory courts have rejected. *Infra* at Section I.

*Second*, and independently, R.V. fails to state a claim upon which relief can be granted. The Complaint fails to plead essential elements of each of the eight causes of action it alleges for the reasons explained below. *Infra* at Section II.

A.V.'s suicide is unquestionably a tragedy, for which Grindr extends its deepest sympathies. However, to the extent adult Grindr users caused A.V.'s injuries, it is those individuals, not Grindr, who are responsible for those injuries.

# BACKGROUND[1]

## I.    The Grindr Application

Grindr provides a social networking application that allows adults to connect and chat with one another.  Compl. ¶¶ 10-13.  To create an account, a user must provide their date of birth and accept Grindr's Terms & Conditions of Service, https://www.grindr.com/terms-of-service/.  Under the Terms, users who represent that they are above the age of majority may access the app:

> YOU MUST BE A LEGAL ADULT. BY ACCEPTING THIS AGREEMENT, CREATING A USER ACCOUNT (AS DEFINED BELOW), AND ENTERING A DATE OF BIRTH FOR AGE VERIFICATION PURPOSES, YOU AFFIRMATIVELY REPRESENT AND WARRANT THAT … YOU ARE CURRENTLY EIGHTEEN (18) YEARS OF AGE OR OVER (OR TWENTY-ONE (21) YEARS IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY).

Terms § 1.2.  The Terms prohibit minors from using the platform.  *See id.* § 1.1.

Grindr informs users that it does not verify the information provided by users (Compl. ¶ 27.d) or conduct background screening of users (Compl. ¶ 27.a):

> YOU ARE SOLELY RESPONSIBLE FOR YOUR USE OF THE GRINDR SERVICES AND YOUR INTERACTIONS WITH OTHER USERS (WHETHER ON OR OFF THE GRINDR SERVICES).  GRINDR MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE CONDUCT, IDENTITY, INTENTIONS, LEGITIMACY, OR VERACITY OF ANY USERS … GRINDR DOES NOT CONDUCT CRIMINAL OR OTHER BACKGROUND

---

[1] Grindr takes the facts from the Complaint, and sources incorporated by reference or otherwise subject to judicial notice.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

> SCREENINGS OF OUR USERS … GRINDR DOES
> NOT INQUIRE INTO THE BACKGROUNDS OF
> OUR USERS OR ATTEMPT TO VERIFY THE
> INFORMATION PROVIDED BY OUR USERS IN
> CONNECTION WITH ACCOUNT CREATION,
> INCLUDING THE ACCURACY OF THE DATE OF
> BIRTH REPORTED….

Terms § 2.

## II.   <u>The Complaint</u>

On August 8, 2022, Plaintiff filed the initial complaint, which the Court struck as a "shotgun pleading."  ECF 1, 5.  Plaintiff filed an amended version (ECF 6), and on September 7, 2022, the Second Corrected Complaint (ECF 9) (the "Complaint").

The Complaint is devoted mainly to allegations regarding the asserted use of Grindr by minors and adults seeking sexual interactions with minors and provides minimal detail regarding A.V.'s own use of Grindr.  The Complaint alleges A.V. created a Grindr account while still a minor (Compl. ¶¶ 17-18), a process that would have required him to misrepresent his age.  It also alleges that A.V. "engaged in sexual relationships and activities with adult users" (Compl. ¶ 18) but provides no details regarding the number, nature, or frequency of these interactions or the identity of the adults.  On August 11, 2020, A.V. died of a self-inflicted gunshot wound.  Compl. ¶ 19.  The Complaint alleges A.V.'s use of Grindr "resulted in severe emotional distress and bodily injuries culminating in [his suicide]."  *Id.*

The Complaint asserts eight causes of action: violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591 (Count I); strict product liability for deficient design of the Grindr application (Count II);

3

product liability for negligent design of the Grindr application (Count III); wrongful death caused by negligence (Count IV); negligence (Count V); intentional infliction of emotional distress ("IIED") (Count VI); negligent infliction of emotional distress ("NIED") (Count VII); and negligent misrepresentation (Count VIII).

## ARGUMENT

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  While the Court must accept the Complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor, it need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  The Complaint fails to satisfy Rule 12(b)(6).

## I.    Section 230 Preempts All of Plaintiff's Claims

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This provision preempts contrary state laws.  47 U.S.C. § 230(e)(3).  "The majority of Federal Circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party

user," and "[t]he Supreme Court of Florida has also recognized the broad preemptive effect of the CDA." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) (citations and internal quotes omitted). As a result, courts have granted motions to dismiss based on Section 230. *See*, *e.g.*, *Dowbenko v. Google Inc.*, 582 F. App'x 801, 804-805 (11th Cir. 2014) (affirming dismissal of claim that Google manipulated search results to feature allegedly defamatory article); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1247-51 (S.D. Fla. 2020) (dismissing claims based on minor's alleged exchange of explicit photos on defendant's website); *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *2-7 (M.D. Fla. Jan. 10, 2022) (dismissing claims that adult convinced minor to undress on defendant's chatroom website); *L.H. v. Marriott Int'l, Inc.*, 2022 WL 1619637, at *8-11 (S.D. Fla. May 23, 2022) (dismissing claim based on allegations plaintiff was trafficked using website).

Plaintiff's allegations establish that Grindr is entitled to Section 230 immunity.

### a.    The Elements of Section 230 Immunity Are Satisfied Here

Section 230 bars claims if "(1) defendant [is] a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." *Roca Labs, Inc.*, 140 F. Supp. 3d at 1319 (internal quotes omitted).

### i.    Grindr Is an Interactive Computer Service Provider

An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server …" 47 U.S.C. § 230(f)(2). As multiple courts have held, Grindr's

app falls squarely within this definition. *See Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588-89 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015).

<strong>ii.    Plaintiff's Claims Treat Grindr as a Publisher of Information</strong>

Courts have interpreted "publication" "capaciously to reach claims that, although pleaded to avoid the CDA, implicitly require recourse to that content posted by a third party to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [content]." *Herrick*, 306 F. Supp. 3d at 590 (internal quotes and alterations omitted); *see also Jane Doe 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) (applying a "capacious conception of" publication under Section 230); *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (same).

Here, all of Plaintiff's claims are based on an assertion that Grindr should have done more to stop minors from using its app and engaging in sexual activity with adult users. *See* Compl. ¶¶ 24-26, 58-63, 78-81, 90-91, 100-103, 114-16, 124-27, 139-44, 154-59. But courts in this and other circuits have consistently held that claims premised on similar failure-to-protect theories are barred by Section 230.

In *Doe v. Kik Interactive, Inc.*, for example, the plaintiff (a minor) alleged that adult users of a web-based interactive service exchanged sexually explicit videos with her. 482 F. Supp. 3d at 1244. The plaintiff claimed the website marketed its service "to underage users without … implementation of sufficient policies to protect the underage users." *Id.* at 1245. The court dismissed the complaint, holding Section 230 barred the claims, rejecting the argument that the claims did not treat defendant

6

as a publisher of information from third parties; to the contrary, asserting liability on the basis of defendant's alleged failure to protect the plaintiff from interactions with other users "is exactly the type of claim that CDA immunity bars." *Id.* at 1249.

In *M.H. v. Omegle*, a minor sued a website that randomly paired users in chatrooms, alleging she was paired with an adult who pressured her to undress and recorded the encounter. 2022 WL 93575 at *1. Her complaint sought to hold the website liable for "fail[ing] to ensure that minor children did not fall prey to child predators that may use the website." *Id.* at *5. The court held Section 230 barred the claims because they treated the defendant as the publisher of third-party information, explaining that "decisions relating to the monitoring, screening, and deletion of content" are "quintessentially related to a publisher's role." *Id.* at *4 (internal quotes omitted). *See also Marriott Int'l*, 2022 WL 1619637 at *10 (dismissing claim that website "fail[ed] to prevent or remove" posts that contributed to sex trafficking).

Courts in other circuits have similarly held that the decision to screen or restrict access to third-party content (or refrain from doing so) is a publishing function for which Section 230 provides immunity. *See*, *e.g.*, *Herrick*, 765 F. App'x at 590-91; *Backpage.com*, 817 F.3d at 20-21; *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008); *Saponaro*, 93 F. Supp. 3d at 323; *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003). And at least two courts have held that Section 230 bars claims ***against Grindr*** for its alleged failure to prevent harm resulting from the exchange of information by users. *See Herrick*, 765 F. App'x at 590-91 (Section 230

barred claims based on Grindr's alleged failure to incorporate protections against fake accounts); *Saponaro*, 93 F. Supp. 3d at 323 (Section 230 immunity barred claims based on Grindr's alleged failure to prevent minors from using its platform).

The second element of Section 230 immunity is therefore satisfied.

### iii.  The Claims Are Based on Information Provided by Third Parties

At their core, Plaintiff's claims are an attempt to hold Grindr liable for allowing A.V. to access its platform, "resulting in A.V. being exposed to and engaged in sexual relationships and activities with adult users."  Compl. ¶ 18; *see* Compl. ¶¶ 58-61 (TVPRA claim based on A.V.'s relationships with adult users), 75-80, 88-90 (product liability claims based on danger to minors who use Grindr to engage in sexual activity with adults), 100-101, 113-14 (negligence claims based on failure to protect minors from using Grindr to engage in sexual relationships with adults), 125, 137-39, 154-58 (IIED, NIED, and negligent misrepresentation claims based on failure to prevent minors from accessing Grindr).  In other words, to the extent A.V. was injured by his use of Grindr, those injuries resulted from his interactions with adult users.  The Complaint does not allege Grindr created content A.V. sent to or received from adult users, only that these interactions took place at least partly on Grindr's application.  But "[m]erely providing the forum where harmful conduct took place cannot … serve to impose liability onto [a provider]." *Omegle*, 2022 WL 93575 at *5 (citing *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014)).

In *Herrick,* for example, the plaintiff sued Grindr after his ex-boyfriend created

8

profiles impersonating him and directed other users to his home and work.  765 F.

App'x at 588.  The plaintiff challenged Grindr's "lack[] [of] safety features to prevent

impersonating profiles and other dangerous conduct," arguing his claims "ar[o]se

from Grindr's management of its users, not user content."  *Id.* at 588-90.  The Second

Circuit disagreed, observing that plaintiff's "ex-boyfriend's online speech is precisely

the basis of his claims that Grindr is defective and dangerous," so his claims were

"based on information provided by another information content provider."  *Id.*

Similarly, courts have applied Section 230 to dismiss claims that providers

allegedly failed to prevent or remove content that led to sex trafficking.  In *L.H. v.

Marriott Int'l*, the plaintiff alleged that traffickers used the defendant's website to

publish ads for commercial sex acts and exchange messages negotiating sales of those

services, including messages stating that the plaintiff was underage.  2022 WL

1619637 at *3.  The court held that Section 230 barred the claims.  *Id.* at *8-10.

The reasoning of *Herrick* and *Marriott Int'l* mandates the same result here.

Plaintiff's claims – whether based expressly on A.V.'s sexual interactions with adult

users, or on Grindr allegedly allowing minors to access a dangerous platform – all

seek to hold Grindr liable for the harm A.V. allegedly suffered as a result of his

interactions with adults.  The third prong of Section 230 immunity is thus satisfied.

Plaintiff claims he is seeking to hold Grindr liable as the "publisher of first

party content," because Grindr publicizes the location of users and reserves the right

to remove content.  Compl. ¶ 48.  This argument fails for at least three reasons.

*First*, neither of these functions involves Grindr's publication of "first party

9

content."  As the Complaint admits, Grindr's location function merely publishes data users themselves share with Grindr.  *See* Compl. ¶ 27(b) ("[T]he Grindr App allows users to share sensitive information, including their … precise location, with Defendant.").  And Grindr's right to remove material from its platform does not turn that material into Grindr's own content.  *See Klayman*, 753 F.3d at 1358 (operator of social media platform did not forfeit Section 230 immunity merely because it had the ability to "control the contents posted on [its] website").

*Second*, a provider "cannot be held liable for providing 'neutral assistance' in the form of tools and functionality available equally to bad actors and the app's intended users."  *Herrick*, 765 F. App'x at 591 (citation omitted); *see also Marriott Int'l*, 2022 WL 1619637 at *9 ("[A] website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others.") (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008)).  As the Second Circuit held in *Herrick*, Grindr's geolocation features are just such "neutral tools" that may be used by good and bad actors and do not transform Grindr into a content creator.  765 F. App'x at 590-91.

*Third*, Grindr's geolocation features cannot defeat Section 230 immunity because the Complaint does not allege these features caused A.V.'s alleged injuries.[2]

---

[2] The Complaint also states that Grindr allows users to identify themselves using certain categorical descriptors (Compl. ¶¶ 31-33), though it does not claim this function transforms Grindr into a first-party publisher of information.  Nor could it.  Users' self-identification as belonging to a particular category is not Grindr's "first party content."  And as the district court in *Herrick* held, Grindr's provision of tools by which users may categorize themselves is plainly neutral assistance, available to good and bad actors alike.  *See Herrick*, 306 F. Supp. 3d at 589 (collecting cases).  Finally, Plaintiff does not claim A.V.'s injuries resulted from Grindr's categorization tools.

In short, Plaintiff's claims are plainly based on third-party information, and the third element of Section 230 immunity is also satisfied.

### b.    The TVPRA Claim Does Not Fall Within Section 230's Exemptions

Section 230 exempts from immunity claims "brought under section 1595 of title 18, *if the conduct underlying the claim constitutes a violation of section 1591 of that title*."  47 U.S.C. § 230(e)(5)(A) (emphasis added).  In other words, a claim is exempt if it alleges the defendant's own conduct violated Section 1591 of the TVPRA. *Omegle*, 2022 WL 93575 at *6; *Kik*, 482 F. Supp. 3d at 1250-51; *Marriott Int'l*, 2022 WL 1619637 at *11; *Does 1-6 v. Reddit, Inc.*, 51 F. 4th 1137, 1142-43 (9th Cir. 2022).

Section 1591 establishes two offenses – direct perpetration of sex trafficking, 18 U.S.C. § 1591(a)(1), and aiding and abetting the direct perpetration of sex trafficking, 18 U.S.C. § 1591(a)(2).  The latter requires that the defendant "[1] knowingly [2] benefit, financially or by receiving anything of value, [3] from participation in a venture which has engaged in sex trafficking."  *Kik*, 482 F. Supp. 3d at 1251 (alterations and internal quotes omitted).  This is the violation the Complaint appears to allege.  *See, e.g.,* Compl. ¶¶ 54, 62, (alleging Grindr "knowingly benefited" from "participation in a venture" engaged in sex trafficking); Compl. ¶¶ 58-60 (alleging Grindr "knowingly benefited" from minors' use of platform).[3]

The Complaint does not plausibly allege Grindr violated Section 1591(a)(2), however, and is not exempt from Section 230's protections, for at least three reasons.

---

[3] The Complaint asserts that Grindr "recruited, enticed, harbored, provided, or obtained by other means persons under the age of eighteen (18) years to engage in commercial sex acts," (Compl. ¶ 61), but does not allege that Grindr directly performed any of these acts.

### i. **The Complaint Does Not Allege a Commercial Sex Act**

Sex trafficking under Section 1591 requires that coercion be used to cause a person to engage in a "commercial sex act," 18 U.S.C. § 1591(a)(1), defined as "any sex act *on account of which* anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). Such an act requires "some sort of *quid pro quo* for the sex acts that occurred." *David v. Weinstein Co. LLC,* 431 F. Supp. 3d 290, 304 n.5 (S.D.N.Y. 2019); *see also United States v. Raniere,* 384 F. Supp. 3d 282, 317 (E.D.N.Y. 2019) ("[T]here must be a causal relationship between the sex act and an exchange of an item of value"); *U.S. v. Rivera*, 2012 WL 6589526, at *5 and n.9 (M.D. Fla. Dec. 18, 2012), *aff'd* 551 F. App'x 531 (11th Cir. 2014) (allowing claim where evidence showed victim engaged in sexual activity in exchange for specific advantages (ordination in religious order) and gifts (cash, iPod, and cell phone)).

Here, the Complaint alleges, in conclusory fashion, that "A.V. received valuable consideration in exchange for the sexual relationships and activities with the adult users." Compl. ¶ 39. But it does not state what items of value A.V. allegedly received, which users provided the items, or the sex acts on account of which he received them. Such rote recitations of legal conclusions, unsupported by any factual allegations, are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

### ii. **The Complaint Does Not Allege Grindr Knowingly Participated in a Venture Engaged in Sex Trafficking of A.V.**

To state a claim under section 1591(a)(2), Plaintiff must also plausibly allege that Grindr "knowingly benefit[ed], financially or by receiving anything of value,

from participation in a venture which has engaged in sex trafficking." *Kik*, 482 F. Supp. 3d at 1251 (alterations and internal quotes omitted).  The participation element requires that Grindr's alleged involvement in the sex trafficking venture be "knowing and active." *Id.* (citing *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).  The Complaint contains no allegations supporting such an inference.

*First*, the Complaint fails to allege Grindr "participat[ed] in a venture which has engaged in sex trafficking."  This requires more than mere failure to prevent sex trafficking; the defendant must have participated in a "common undertaking or enterprise **with [the victim's] sex traffickers**." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) (emphasis added) ("[O]bserving something is not the same as participating in it."); *Marriott Int'l*, 2022 WL 1619637 at *7 (failing to implement policies to combat trafficking "not enough to trigger TVPRA liability") (collecting cases).  Plaintiff "must allege specific conduct that furthered the sex trafficking venture." *Kik*, 482 F. Supp. 3d at 1251 (citation omitted); *see also Omegle*, 2022 WL 93575 at *6 (defendant must have "had some degree of active participation" in the venture) (citation omitted); *Reddit*, 51 F. 4th at 1145 ("turn[ing] a blind eye" not active participation).  Plaintiff has not – and cannot – make such allegations.

Plaintiff does not allege a single specific act by Grindr that furthered adults' alleged sex trafficking of A.V.  Grindr's alleged actions therefore amount to exactly the kind of passive nonfeasance that is insufficient to support a TVPRA violation.

*Second*, the Complaint does not allege Grindr's "knowing" involvement in

13

A.V.'s sex trafficking. Section 1591(a)(2) requires that the defendant "knowingly participate[] in *the sex trafficking venture involving [the victim]*." *Kik*, 482 F. Supp. 3d at 1251 (emphasis added). This requires knowledge of the venture that forms the basis of the claim. *See id.* (defendant's "conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture") (quoting *Noble v. Weinstein,* 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)); *Reddit*, 51 F. 4th at 1145 (plaintiff must allege "actual knowledge" of alleged venture). Generalized knowledge of instances of sex trafficking is insufficient. *Kik*, 482 F. Supp. 3d at 1250-51 and n.6; *Reddit*, 51 F. 4th at 1145.

The Complaint does not allege any facts that plausibly show – or even suggest – Grindr knew of A.V.'s sexual interactions with adults. Setting aside assertions that parrot the legal standard, *e.g.,* Compl. ¶¶ 21-22, 27, 40, 55, 58-62, the Complaint alleges only that Grindr should have *constructive* knowledge that *some* adult users have misused its platform to engage in sex with minors. *Id.* ¶¶ 28-30. This is exactly the kind of generalized awareness that is insufficient to support an allegation of knowing participation. *See, e.g., Kik,* 482 F. Supp. 3d at 1251 (alleged knowledge of other sex trafficking on defendant's platform and failure to prevent it insufficient to satisfy "knowingly participated" element of Section 1591); *Reddit*, 51 F. 4th at 1145.

### iii.    The Complaint Does Not Allege Grindr Knowingly Benefited from the Alleged Sex Trafficking of A.V.

Finally, R.V. has failed to allege a violation of the TVPRA because he does not sufficiently allege Grindr satisfied the "knowing benefit" element of Section

14

1591(a)(2).  This requires alleging "a causal relationship between [Grindr's] affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with **actual . . . knowledge of that causal relationship**."  *Geiss v. Weintstein Co. Holdings, LLC,* 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)  (emphasis added) (citing *Afyare*, 632 F. App'x at 286); *Reddit*, 51 F. 4th at 1145.  "The controlling question" "is whether" the alleged perpetrators of sex trafficking "provided any … benefits" to Grindr "because of" Grindr's affirmative conduct to knowingly facilitate that **specific** "sexual misconduct."  *Geiss,* 383 F. Supp 3d at 169.  Thus, for example, in *Geiss,* the court dismissed a claim that The Weinstein Company and its officers and directors aided and abetted Harvey Weinstein's assault of women, even though they "undoubtedly benefited" from film revenue and Weinstein's influence, as plaintiffs failed to allege that Weinstein "secured TWC's alleged complicity in his sexual violence as a condition of his employment" or "that any directors or officers to whom TWC paid a salary were compensated" for participating in the assaults.

Here, the causal link between the benefits to Grindr and the alleged trafficking of A.V. is even more attenuated than in *Geiss*.  The Complaint alleges Grindr benefits **generally** from minors using its platform, *id.* ¶ 36, but does not point to any benefit Grindr allegedly received from A.V. or the adult users with whom he had sexual interactions – much less that it benefited **because of** those interactions.  *See Reddit*, 51 F. 4th at 1145 (claims defendant generally made money from advertising insufficient to allege knowing benefit from alleged sex trafficking on site).  Indeed, like in *Geiss*,

15

adults' misuse of the Grindr app to engage in sexual activity with minors and the litigation costs Grindr has already been forced to incur far outweigh any marginal benefit Grindr might have obtained from unintentionally hosting such content. *See Geiss* 383 F. Supp 3d at 169-70 ("[P]laintiffs' allegations suggest that H. Weinstein benefited TWC *in spite of* his alleged predations, which caused many women not to work with TWC, diverted company resources toward supervision of H. Weinstein and away from business activities, and exposed TWC to potential liability.").

Plaintiff has not alleged that Grindr knowingly benefited from the alleged sexual trafficking of A.V., and for this additional reason fails to allege Grindr violated Section 1591, meaning his claims are not exempt from Section 230.

## II.    Plaintiff's Claims also Fail for Reasons Independent of Section 230

For the same reasons Plaintiff's TVPRA claim (Count I) is not exempt from Section 230 immunity, it also fails on its merits. The same is true of Plaintiff's other claims: each fails because the Complaint does not allege essential elements.

### a.    The Complaint Fails to Allege Causation (Counts II-VIII)

The Complaint does not plausibly allege any conduct by Grindr proximately caused A.V.'s injuries. Because proximate cause is an element of each of Counts II-VIII, these claims should be dismissed. *See, e.g., Sparks v. Medtronic, Inc.*, 2021 WL 2649235, at *2 (M.D. Fla. June 28, 2021) (dismissing design defect claim for failure to plead proximate cause); *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010) (negligence); *Kaufman v. Pfizer Pharms., Inc.*, 2010 WL 9438673, at *8-9 (S.D. Fla. Nov. 23, 2010) (IIED); *Colon v. Twitter*, 2020 WL 11226013, at *6 (M.D.

16

Fla. Mar. 24, 2020) (NIED, wrongful death); *Bailey v. Janssen Pharmaceutica, Inc.*, 2006 WL 3665417, at *7 (S.D. Fla. Nov. 14, 2006) (negligent misrepresentation).

The Complaint alleges that A.V. used Grindr as a minor (Compl. ¶¶ 17-18), engaged in sexual relationships with adult users (Compl. ¶ 18), and died by suicide (Compl. ¶ 19). But it alleges no facts linking A.V.'s suicide to his use of Grindr or interactions with adult users; rather, the Complaint's causation allegations consist of variations of the same conclusory statement that "A.V.'s access, download, use, purchase, and/or subscription to Grindr Services resulted in severe emotional distress and bodily injuries culminating in A.V.'s death from a self-inflicted gunshot wound." Compl. ¶ 19; *see also* Compl. ¶¶ 40, 63, 81, 91, 103, 116, 127-30, 144, 159.

Courts in this District regularly dismiss complaints containing such barebones allegations of causation. For example, in *Sparks v. Medtronic, Inc.*, the court dismissed a claim alleging defective surgical mesh caused plaintiff's hernia, where plaintiff "merely assert[ed]" that "as a direct and proximate result of the design defect, he suffered injury and was damaged"; "d[id] not allege any facts to support his assertion"; and "did not attempt to explain why the mesh was a more likely cause of [his] injuries than other possible causes." 2021 WL 2649235 at *2; *see also, e.g., Rinker v. Carnival Corp.*, 753 F. Supp. 2d at 1242 (dismissing negligence claim based on cruise ship's alleged mistreatment of plaintiff's illness for failure to explain how alleged breaches of duty led to plaintiff's injuries); *Dimieri v. Medicis Pharms. Corp.*, 2014 WL 3417364, at *5 (M.D. Fla. July 14, 2014) (dismissing product liability claim based on allegation medication caused plaintiff to lose hair, where plaintiff did not

17

deny other factors might have caused hair loss); *Kaufman*, 2010 WL 9438673 at *8 (dismissing IIED claim based on drug's marketing for failure "to allege factual details about how Defendant's conduct caused [plaintiff's] emotional distress").

The Complaint alleges no facts to support the allegation that A.V.'s suicide was caused by his use of Grindr.  Nor does it explain why his use of Grindr is a more likely cause of this injury than any of the myriad other factors that can affect an individual's mental health.  Plaintiff has not sufficiently pled causation, and Counts II-VIII should be dismissed for that reason as well.

    **b.**    **Plaintiff's Product Liability Claims (Counts II and III) Fail Because Grindr Is Not a Product and Is Not Unreasonably Dangerous**

Plaintiff's product liability claims alleging a design defect (Counts II and III) require him to allege Grindr manufactured or distributed a "product" with "a defect that renders it unreasonably dangerous."  *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342-46 (M.D. Fla. 2003).  The Complaint fails to meet either requirement.

*First*, Grindr's platform is not a "product."  The doctrine of product liability as articulated in the Restatement (Second) of Torts – which the Florida Supreme Court adopted in *West v. Caterpillar Tractor Co. Inc.*, 336 So. 2d 80, 87 (Fla. 1976) – applies to *tangible* items.  *See* Restatement (Second) of Torts § 402A (1965) (comment d) (product liability law applies to "products which, if they are defective, may be expected to and do cause only 'physical harm' in the form of damage to the user's land or chattels"); *id.* (Reporter Notes Nos. 1-3, 5) (listing as examples "food," "automobiles," "cigarettes," "tires," "soap," and other tangible items); *see also*

18

*Edward M. Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (Fla. 1986) (public roads not a product as "they are [not] offered in the stream of commerce in the way that, for instance, soft drinks or automobiles are").  And the Restatement (Third) of Torts makes this explicit, defining a product as "tangible personal property distributed commercially for use or consumption," distinct from "real property" and "[s]ervices, even when provided commercially."  Restatement (Third) of Torts § 19 (1988).

Accordingly, Florida law distinguishes between physical objects, which may be "products," and intangible ideas or expressions, which may not.  *See, e.g.*, *Cardozo v. True*, 342 So. 2d 1053, 1056 (Fla. 2d DCA 1977) (dismissing product liability claim based on book contents, which "are not equivalent to commercial products").  Similarly, courts have dismissed products liability claims based on the defendant's provision of services, as such causes of action "appl[y] to sellers of products, rather than services."  *Lalonde v. Royal Caribbean Cruises, Ltd.*, 2019 WL 144129, at *2 (S.D. Fla. Jan. 9, 2019) (citations omitted).  And courts nationwide have rejected attempts to extend product liability to software, websites, or apps that facilitate communication.  *See, e.g.*, *Jackson v. Airbnb, Inc.*, 2022 WL 16752071, at *9 (C.D. Cal. Nov. 4, 2022) (Airbnb not a product); *Doe v. Uber Techs., Inc.*, 79 Cal. App. 5th 410 (Cal. Ct. App. 2022) (Uber app not a product), *rev. denied* (Aug. 24, 2022); *Rogers v. Christie*, 795 F. App'x 878, 880 (3d Cir. 2020) (algorithm not a product); *Intellect Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273, at *7 (N.Y. Sup. Ct. N.Y. Cty. Sept. 11, 2009) (website that provided a "forum for third-party expression" not a product).

Here, Grindr's platform is not a tangible item but an application that enables

its users to communicate – that is, it provides a *service* to which product liability law is inapplicable. *See Jackson*, 2022 WL 16752071 at *9 ("Airbnb is a platform that connects users; it is more akin to a service than to a product") (citation omitted); *see also* Compl. ¶ 15 (referring to Grindr app as "Grindr Services").  Moreover, by trying to hold Grindr liable for users' communications, Plaintiff seeks to apply the law of product liability to ideas and expressions, in contravention of Florida law.

*Second*, Plaintiff's product liability claims fail because the Complaint does not allege Grindr's alleged defect "renders it unreasonably dangerous," *i.e.* "dangerous *to an extent beyond which would be contemplated by the ordinary consumer who purchases it*." *Gibbs v. Republic Tobacco, L.P.*, 119 F. Supp. 2d 1288, 1295 (M.D. Fla. 2000) (quoting Restatement (Second) of Torts § 402A cmt. i) (emphasis added).  The standard is an objective one. *Id*.  Courts have repeatedly held that products are not unreasonably dangerous if their alleged dangers are obvious and well-known to the public. *See, e.g., Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1216-18 (M.D. Fla. 2011) (dismissing design defect claims based on alcohol beverages because "the dangers associated with alcohol are well known"); *Gibbs*, 119 F. Supp. 2d at 1295 (dismissing claim based on tobacco products, citing "the widespread public knowledge and acceptance of the dangers associated with tobacco use").

Here, the alleged danger to A.V. – that he would meet adult users – was not merely well-known, but one of the core purposes of Grindr, and indeed a reason why Grindr forbids minors from using the app.  Like alcoholic beverages and tobacco, the

20

alleged dangers of the app cannot constitute a design defect under Florida law.

   **c.    Plaintiff's Claims Sounding in Negligence (Counts III, IV and V) Fail Because the Complaint Fails to Allege Grindr Owed A.V. a Duty**

A claim for negligence requires the plaintiff to allege (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) proximate cause of plaintiff's injury; and (4) actual loss or damage. *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 27-28 (Fla. 2011).[4]  Whether the defendant owed the plaintiff a duty is a question of law for the court. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  The Complaint fails to allege Grindr owed A.V. a duty.

*First*, "the general rule is that a party has no legal duty to prevent the misconduct of third persons .... Florida courts have long been loathe [*sic*] to impose liability based on a defendant's failure to control the conduct of a third party." *Lee v. Clorox Int'l Co.*, 466 F. App'x 826, 827 (11th Cir. 2012) (citation omitted).

A defendant may have a duty to prevent third-party misconduct if there is a "special relationship" (1) between the defendant and the third party, such that the defendant has a duty to control the third party's conduct and the right or ability to do so; or (2) between the defendant and the plaintiff. *Garrison Retirement Home Corp. v. Hancock*, 484 So.2d 1257, 1261 (Fla. 4th DCA 1985); *see also Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1354 (S.D. Fla. 2003) ("Under Florida law, only a few such 'special relationships' exist").  Here, the Complaint does not allege Grindr had

---

[4] The same elements apply to product liability claims for negligent manufacture, *Cook*, 829 F. Supp. 2d at 1217, and wrongful death claims based on negligence, *Olson v. Barrett*, 2015 WL 1277933, at *5 (M.D. Fla. Mar. 20, 2015) (citing *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007)).

the right or ability to control the conduct of adult users, and A.V.'s mere use of Grindr's platform does not give rise to a "special relationship." *See Herrick*, 306 F. Supp. 3d at 598-99 (under New York law, holding Grindr did not have special relationship with its users); *Dyroff v. Ultimate Software Group, Inc.*, 2017 WL 5665670, at *13-14 (N.D. Cal. Nov. 26, 2017) (under California law, "a website has no 'special relationship' with its users"). The "special relationship" exception is inapplicable.[5]

**Second**, the only injury that the Complaint identifies with specificity is A.V.'s suicide. While this was tragic, "[g]enerally no liability exists for another's suicide in the absence of a specific duty of care." *Surloff v. Regions Bank*, 179 So.3d 472, 475 (Fla. 4th DCA 2015). Plaintiff points to no facts supporting such a duty here.

### d.   Plaintiff's IIED Claim Fails Because Grindr's Behavior was Not Outrageous (Count VI)

An IIED plaintiff must allege the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278-79 (Fla. 1985). Whether conduct meets this "extremely high standard" is a question of law for the court. *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012). In addition, to state a claim for IIED, the plaintiff must allege the conduct was "directed at the plaintiff."

---

[5] A duty to protect the plaintiff from third-party conduct may also arise if the defendant controls the instrumentality of the harm, the premises upon which the tort is committed, or the person who committed the tort. *Waves of Hialeah, Inc. v. Machado*, 300 So. 3d 739, 743 (3d DCA 2020). The Complaint does not allege Grindr controlled the adult users with whom A.V. had sexual interactions, nor identify the premises on which those interactions occurred or the instrumentality through which they were accomplished, let alone that Grindr controlled either.

22

*Dunkel v. Hamilton*, 2016 WL 4844662, at *9 (M.D. Fla. Aug. 8, 2016).

Here, the Complaint contains no nonconclusory allegations that Grindr directed any conduct at A.V.  *See* Compl. ¶¶ 124-30.  And the conduct Plaintiff does allege – operation of an app that allows users to interact  – falls far short of the "extremely high standard" for "outrageous" behavior.  *See*, *e.g.*, *Garcia*, 838 F. Supp. 2d at 1339 (dismissing IIED claim where plaintiff alleged cruise crew members kicked and punched plaintiff, dragged her across the floor while handcuffed, and confined her to her cabin); *Clemente v. Horne*, 707 So. 2d 865, 866-67 (Fla. 3d DCA 1998) (knowingly maintaining rental property below flood level such that property was in standing water and infested with termites, causing tenant family's constructive eviction, not sufficiently outrageous).  Plaintiff's IIED claim must be dismissed.

### e.    Plaintiff's NIED Claim Fails Because the Complaint Does not Allege that A.V. Suffered a Physical Impact (Count VII)

An NIED claim "requires that… the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact."  *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362-64 (Fla. 1995) (internal quotes omitted).  The impact must "touch or enter into the plaintiff's body."  *Zell v. Meek*, 665 So. 2d 1048, 1050 n. 14 (Fla. 1995).  Failure to allege such an impact is fatal to a claim.  *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1140-41 (M.D. Fla. 2021).

Plaintiff's NIED claim is based on Grindr having allegedly "allowed A.V. to access, download, use, purchase, and/or subscribe to Grindr Services."  Compl. ¶ 141.  But Plaintiff does not allege A.V.'s use of Grindr had a physical impact on him,

23

much less that his emotional distress resulted from injuries sustained in that impact.[6]

### f.    The Complaint Fails to State a Claim for Negligent Misrepresentation (Count VIII)

A negligent misrepresentation claim must allege (1) defendant made a false statement of material fact, (2) it knew or should have known was false, (3) on which it intended to induce plaintiff to rely, and (4) plaintiff was injured by acting in justifiable reliance on the statement. *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1292-93 (M.D. Fla. 2010). The court should dismiss a negligent misrepresentation claim based on a statement of opinion, *Rothis v. M & I Marshall & Isley Bank*, 2010 WL 3893960, at *5 (M.D. Fla. Sept. 29, 2010), or where plaintiff fails to allege its reliance was justifiable. *Tambourine Comerico Int'l S.A. v. Solowsky*, 2007 WL 689466, at *6-7 (S.D. Fla. Mar. 4, 2007). Plaintiff's claim fails.

*First*, Plaintiff's claim, which is based on alleged "assurances from Defendant that Grindr Services were safe, and that Defendant would enforce its user policies" (Compl. ¶ 152), fails because such claims constitute "mere puffery," not statements of fact, and "cannot, therefore, support a claim for misrepresentation." *Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019); *see also Gibson v. NCL (Bahamas) Ltd.*, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) ("the general promise of a 'safe, reliable, licensed, excursion' is not actionable").

---

[6] An exception exists to the impact rule under which "psychological trauma and mental distress are recoverable as elements of damage without direct physical impact in cases where a plaintiff was in the sensory perception of physical injuries negligently imposed upon a close family member and where the plaintiff suffered a discernible physical injury." *Humana of Fla.*, 652 So. 2d at 363. The Complaint does not contain allegations sufficient to satisfy this exception.

24

*Second*, A.V.'s reliance was not justifiable because Grindr's Terms explicitly state it does not screen users or verify the information they provide. *See* Compl. ¶ 27; *see also Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 679 (S.D. Fla. 2012) (reliance on accuracy of appraisal "unjustifiable as a matter of law" where appraisal included disclaimer stating figures had not been verified).[7]

### LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to MD Local Rule 3.01(g), the undersigned certifies that she has conferred with counsel for Plaintiff, who opposes the relief sought herein.

### <u>CONCLUSION</u>

For all of these reasons, Defendant respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.

Dated: December 23, 2022

DAVIS WRIGHT TREMAINE LLP

 *s/ Ambika Kumar*
Ambika Kumar (admitted *pro hac vice*)
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 757-8039
Facsimile: (206) 757-7039
ambikakumar@dwt.com

Carl Mazurek (admitted *pro hac vice*)
1251 Avenue of the Americas-21st FL

---

[7] The Complaint also does not meet the heightened pleading requitements of Fed. R. Civ. P. 9(b), which apply to negligent misrepresentation claims. *Drilling Consultants, inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1234 (M.D. Fla. 2011). The Complaint does not indicate what section of the Terms contained the representations on which A.V. allegedly relied, nor when he saw them.

25

New York, NY 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
carlmazurek@dwt.com

WALTERS LAW GROUP

Lawrence G. Walters, Esq.
Florida Bar NO. 0776599
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 957-9150
Facsimile: (407) 774-6151
Email: larry@firstamendment.com
Secondary Email:
paralegal@firstamendment.com

*Attorneys for Defendant Grindr LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on this 23rd day of December, 2022, which will serve a copy by email on all counsel of record.

*s/ Ambika Kumar*

Ambika Kumar
